**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BOBBY WAYNE SWISHER,
            *Petitioner-Appellant,*

v.

PAGE TRUE, Warden, Sussex I State
Prison,

            *Respondent-Appellee.*

No. 02-10

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(CA-00-950-7)

Argued: September 23, 2002

Decided: March 28, 2003

Before LUTTIG and WILLIAMS, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Application for certificate of appealability denied and appeal dismissed by published opinion. Judge Williams wrote the opinion, in which Judge Luttig and Senior Judge Hamilton joined.

---

**COUNSEL**

**ARGUED:** Anthony Frazier King, WALLACE, KING, MARRARO & BRANSON, Washington, D.C., for Appellant. Pamela Anne Rumpz, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee. **ON BRIEF:** Steven

D. Rosenfield, Charlottesville, Virginia, for Appellant. Jerry W. Kilgore, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

Bobby Wayne Swisher applies to this court for a certificate of appealability (COA) to review the district court's dismissal of his petition under 28 U.S.C.A. § 2254 (West 1994 & Supp. 2002).[1] Swisher asserted a variety of claims in his habeas petition in the district court. In his motion for a COA, Swisher asserts that he is entitled to relief as to several of those claims including, inter alia, the following: (1) that the Commonwealth, in prosecuting him, knowingly elicited perjurious testimony from a witness and failed to correct the erroneous impression conveyed by that witness's testimony, in violation of the Fourteenth Amendment; (2) that his counsel failed adequately to impeach a witness against him with the witness's prior inconsistent statement to police, thus providing ineffective assistance of counsel in violation of the Sixth Amendment; and (3) that the Commonwealth, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), failed to turn over evidence that a witness against him sought (and possibly received) a monetary reward in exchange for his testimony. Finding that Swisher has not made the requisite substantial showing of the denial of a constitutional right as to any of these claims, we deny Swisher's application for a COA and dismiss his appeal.

I.

The undisputed facts of Swisher's case are summarized in the opinion of the Supreme Court of Virginia resolving Swisher's appeal from his conviction. *Swisher v. Commonwealth*, 506 S.E.2d 763 (Va.

---

[1]Swisher named Page True, Warden of Sussex I State Prison, as the Respondent in his petition. For ease of reference, we refer to Respondent as "the Commonwealth."

1998). We restate those facts relevant to Swisher's petition briefly below.

On February 5, 1997, Dawn McNees Snyder disappeared from the florist shop where she worked in Augusta County, Virginia. Her body was discovered on February 21, 1997, on the bank of the South River, approximately two miles from the florist shop. Forensic examination revealed that she had been raped, sodomized, and that her death had been caused by some violence to her neck.[2]

On February 22, 1997, Swisher was at an apartment with two friends, Clarence Henry Ridgeway, Jr. and Shane Knous. Swisher told Ridgeway and Knous that he had abducted, raped, sodomized, and killed Snyder. He stated specifically that on February 5 he entered the florist shop where Snyder worked and told her he had a gun in his pocket. He also threatened Snyder with a butcher's knife. Swisher forced Snyder to accompany him from the florist shop to a field near the South River, where he forced her to perform oral sex on him and remove her clothes. Swisher then raped Snyder and again forced her to perform oral sex on him. Finally, after Snyder put her clothes back on, Swisher cut her face and throat with the butcher's knife and threw her, still alive, into the South River. As Snyder floated in the river, Swisher walked along the bank and shouted, "Are you dead yet?" A few moments later, when she began to crawl up the bank, Swisher "got scared and took off running" away from the river to his house. *Swisher*, 506 S.E.2d at 765.

Ridgeway notified the Augusta County Sheriff's Office of Swisher's statements on the morning of February 23. Later that day, Swisher accompanied four deputies to the Sheriff's Office for questioning. After being arrested and advised of his *Miranda* rights,

---

[2]Although the medical examiner who testified at trial was unable to determine conclusively whether Snyder's throat had been cut because animals had eaten her larynx, trachea, and the large arteries and veins in the neck, he testified that her death was the result of "violent causes probably related to the neck" and noted that the highest concentration of blood on her clothing appeared around the neck and chest area. *Swisher v. Commonwealth*, 506 S.E.2d 763, 766 (Va. 1998) (internal quotation marks omitted).

Swisher admitted, in an audiotaped confession, that he had sodomized and raped Snyder, murdered her by cutting her throat, and thrown her into the South River.

Swisher was charged with murder, abduction, rape, and forcible sodomy in Snyder's death. Following a jury trial, the jury found Swisher guilty of all charges on October 29, 1997, including capital murder pursuant to Va. Code Ann. § 18.2-31 (Michie 1996). In the penalty phase of the trial, the Commonwealth presented the testimony of Ridgeway, who testified that Swisher had confessed to him and Knous that he murdered Snyder. Ridgeway testified that Swisher had told him Swisher felt like he could "do it again." (J.A. at 326.) In a previous statement to police, however, Ridgeway stated that he had not heard Swisher say he felt like he could "do it again," but that Knous remembered hearing Swisher make such a statement. (J.A. at 317.) Ridgeway further testified that he had not sought and was not interested in a reward offered for information about Snyder's murder.[3]

---

[3]Ridgeway's testimony regarding the reward money occurred during a colloquy with defense counsel, as related below:

Q:   Did you put in for the reward?

A:   No, sir.

Q:   You haven't put in for the reward?

A:   No, sir.

Q:   And you haven't told anybody that you put in for the ten thousand dollar reward?

A:   No, Sir. I have a feeling . . .

Q:   You deny that, too?

A:   I have a feeling that — the reason why I did this was to find out the truth. It hasn't nothing to do with about any money.

Q:   So you did this to — to — for yourself; to find out the truth?

A:   That . . .

Q:   And you don't want the ten thousand dollars?

A:   Honestly, yes sir. Yes, sir.

At the conclusion of the penalty phase, the jury fixed Swisher's sentence for Snyder's murder at death, and the trial judge sentenced him to death on February 18, 1998.

Swisher filed a direct appeal, which was consolidated with the automatic review of his death sentence in the Supreme Court of Virginia. *See Swisher*, 506 S.E.2d at 765; Va. Code Ann. § 17.1-313(A) (Michie 1999) (providing for automatic review of death sentences in the Supreme Court of Virginia); § 17.1-409 (authorizing the Supreme Court of Virginia to certify for its review a case filed with the Virginia Court of Appeals before that court has resolved the case). The Supreme Court of Virginia denied relief. Swisher then filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, *see* Va. Code Ann. § 8.01-654(C) (Michie 2000) (vesting exclusive jurisdiction in the Supreme Court of Virginia of petitions for writs of habeas corpus by petitioners held under a sentence of death), and was denied relief. Thereafter, he filed a petition pursuant to 28 U.S.C.A. § 2254 in the United States District Court for the Western District of Virginia. On March 28, 2002, the district court denied relief on that petition.[4]

---

    Q:   You don't want that?

    A:   No, sir.

(J.A. at 333-34.)

The district court stated in its opinion that "[t]rial counsel [for Swisher] found no indication in the prosecutors' open file indicating that anyone at all received the reward money." (J.A. at 740.) The parties apparently now agree, however, that the reward was in fact paid to someone after the trial. Swisher asserts that Ridgeway and Knous split the reward.

Investigators hired by Swisher's counsel in this appeal submitted affidavits in which they state that they found Ridgeway and asked him whether he had received a reward for providing information about Snyder's murder. They assert that Ridgeway confirmed that after Swisher's trial he and Knous received the offered reward. The investigators further assert that Ridgeway told them that he "understood he was in line for some money" before the trial began, but that he refused to provide an affidavit stating these facts.

[4]Swisher moved in the district court for a COA, which was denied. *See* Fed. R. App. P. 22(b)(1). As noted above, Swisher has now petitioned

Swisher seeks a COA as to numerous claims raised in the district court. We address the following three claims below: (1) that the Commonwealth knowingly elicited perjurious testimony; (2) that Swisher received ineffective assistance of counsel; and (3) that the Commonwealth failed to turn over *Brady* material.[5]

## II.

We may only issue a COA if Swisher has made a "substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2) (West Supp. 2002). Absent a COA, "an appeal may not be taken" to this court from the district court's denial of relief on the § 2254 petition. *Id.* § 2253(c)(1); *cf. Miller-El v. Cockrell*, ___ U.S. ___, 123 S. Ct. 1029, 1039 (2003) (noting that a COA is "a jurisdictional prerequisite" to consideration of an appeal by a prisoner denied habeas relief in the district court). To make the requisite substantial showing, "a petitioner must 'show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Id.* (quoting *Slack*, 529 U.S. at 484 (in turn quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983))).

---

this court for the required certificate. *See* 28 U.S.C.A. § 2253(c)(1) (West Supp. 2002) (stating that no appeal may be taken from the final order of a district court disposing of an applicant's petition under 28 U.S.C.A. § 2254 unless a circuit justice or judge issues a COA).

[5]Swisher asserted a number of other claims in his application for a COA, including the following: that the Commonwealth withheld evidence, in violation of *Brady*, about its failure to treat Swisher's depression prior to trial and its administration of anti-depressant drugs to Swisher; that Swisher's trial counsel was deficient in several ways other than those discussed above, including by failing to impeach other witnesses who testified at trial or at the sentencing hearing; that the Commonwealth knowingly used perjured testimony from witnesses other than Ridgeway; that the jury instructions and verdict form used at sentencing were defective and improper; and that Virginia's death penalty statute, and the death penalty itself, are unconstitutional. We conclude that no reasonable jurist would find the district court's resolution of those claims debatable or wrong and deny a COA as to each of them.

The Supreme Court has held that "[w]here a district court has rejected [a petitioner's] constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to obtain a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484; *cf. Miller-El*, 123 S. Ct. at 1046 (Scalia, J., concurring) (noting that "a habeas petitioner seeking to appeal a district court's denial of habeas relief on procedural grounds must not only make a substantial showing of the denial of a constitutional right but *also* must demonstrate that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"). The Supreme Court has stated that "[t]his construction [of the standard applicable when the district court rejects a claim on procedural grounds] gives meaning to Congress' requirement that a prisoner demonstrate substantial underlying constitutional claims and is in conformity with the meaning of the 'substantial showing' standard provided in *Barefoot* and adopted by Congress in AEDPA." *Slack*, 529 U.S. at 484 (internal citation omitted).

The Supreme Court recently provided further guidance on the question of how an application for a COA is to be assessed in *Miller-El*. The Court's opinion in *Miller-El* makes clear that whether to grant a COA is intended to be a preliminary inquiry, undertaken before full consideration of the petitioner's claims. *Miller-El*, 123 S. Ct. at 1039 (noting that the "threshold [COA] inquiry does not require full consideration of the factual or legal bases adduced in support of the claims"); *id.* at 1040 (noting that "a claim can be debatable even though every jurist of reason might agree, *after the COA has been granted and the case has received full consideration*, that petitioner will not prevail") (emphasis added); *id.* at 1042 (noting that "a COA determination is a separate proceeding, one distinct from the underlying merits"); *id.* at 1046-47 (Scalia J., concurring) (noting that it is erroneous for a court of appeals to deny a COA only after consideration of the applicant's entitlement to habeas relief on the merits).

Indeed, such "full consideration" in the course of the COA inquiry is forbidden by § 2253(c). *Id.* at 1039 ("When a court of appeals side steps [the COA] process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.").

The current posture of this appeal, in which we are called on to determine whether to issue a COA as to issues which have been fully briefed and argued before the panel, is thus out of step with the procedural treatment that the Supreme Court has indicated is appropriate for COA applications under § 2253(c). Unable to rectify that circumstance, we proceed nevertheless to address Swisher's request for a COA under the standard enunciated by the Supreme Court in *Slack* and *Miller-El*.

A.

Swisher argues that the Commonwealth knowingly elicited perjurious testimony from Ridgeway during the penalty phase of his trial. Specifically, he asserts that the Commonwealth, knowing Ridgeway had told police he had not heard Swisher say he could "do it again," nevertheless permitted Ridgeway to testify that he had heard Swisher make that statement. Swisher argues that the Commonwealth's having elicited this testimony from Ridgeway, knowing it to be false, and having failed to correct the erroneous impression it created, violated his rights under the Fourteenth Amendment. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also Giglio v. United States*, 405 U.S. 150, 153 (1972) (noting that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice") (internal quotation marks omitted).

The district court denied this claim because Swisher could not show cause and prejudice to overcome his procedural default.[6]

---

[6]The Supreme Court of Virginia found this claim defaulted because it had not been raised at trial or in Swisher's direct appeal. *See Slayton v. Parrigan*, 205 S.E.2d 680, 682 (1974) (holding that a claim that could have been raised at trial or on direct review, but was not, may not be raised on state collateral review). This state procedural bar prevented federal habeas corpus review of Swisher's claim absent cause and prejudice for the default. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996).

Because, as we discuss briefly below, Swisher has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling," *Slack*, 529 U.S. at 484, we deny the application for a COA on this claim.

Swisher argues that he has demonstrated cause because the Commonwealth's "deliberate use of this perjured testimony was designed to obscure its falsity," (Appellant's Br. at 41), and therefore its use constituted " 'interference by officials' that ma[de] compliance with the State's procedural rule impracticable." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotation marks omitted)). The basis for Swisher's assertion that Ridgeway's testimony was perjurious, however, is the inconsistency between the statement Ridgeway gave to the police and the statement he made on the stand, and Swisher was in possession of Ridgeway's statement to police when Ridgeway testified. Accordingly, no act by the Commonwealth impeded Swisher's ability to raise the claim he now raises at trial or on appeal, and he cannot demonstrate cause for his procedural default on this basis.

Swisher also asserts that he has demonstrated cause stemming from his counsel's ineffectiveness in defaulting this claim. *See Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (constitutionally ineffective assistance of counsel may establish cause for a procedural default); *see also Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). The requisite ineffective assistance, however, "is *itself* an independent constitutional claim" subject to the requirement of exhaustion in state court and to the doctrine of procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (emphasis in original); *id.* at 453 (holding that ineffective assistance claims asserted as cause for procedural default of other claims are themselves subject to procedural default rule); *see also Carrier*, 477 U.S. at 488-89 (noting that "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"). Swisher does not assert that he can demonstrate cause and prejudice for his procedural default of this ineffective assistance claim. Accordingly, he cannot use ineffective assistance of counsel to demonstrate cause for the failure to raise the use of perjured testimony claim.

Because Swisher has not shown that the district court's procedural ruling was debatable, we deny a COA as to this claim.

B.

Swisher next contends that his counsel was ineffective at trial for failing to cross-examine Ridgeway about the inconsistency between Ridgeway's statement to police, in which he stated that he had not heard Swisher say he felt like he could "do it again," and his testimony at trial, during which he stated that he *had* heard Swisher make such a statement.[7] Because the district court dismissed Swisher's claim on the merits, we ask whether Swisher has shown that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

---

[7]During his testimony at the sentencing phase of the trial, Ridgeway was asked by the prosecutor whether Swisher had "said anything about the future" in the course of his confession. The following exchange between the prosecutor and Ridgeway occurred:

> Ridgeway: He said that — after he had got upset and everything, he [said] "It feels like he could do it again." And that's . . .
>
> Prosecutor: He told you it felt like he could do it again?
>
> Ridgeway: That's what really got me, is when he looked me in the eyes and said that.

(J.A. at 326.)

In a previous, audiotaped conversation with police, Ridgeway had stated that "Bobby did tell us near the end of [the confession] he would do it again." (J.A. at 317.) In response to the question "And when did he tell you that?," however, Ridgeway then said:

> before I picked up the knife he said he feels like he could do it again. But sir I kinda of didn't the reason I'm saying this now is because I don't remember [Swisher] saying that [he would do it again] cause if it was when I got up but Shane recalls, remember [sic] him saying that to a T but I don't remember him saying that I'm just going off what Shane said because Shane was scared then.

(J.A. at 317.)

To obtain relief on an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show (1) that his counsel's performance was "deficient in that it fell below an objective standard of reasonableness and outside the wide range of professionally competent assistance . . . and (2) that the deficient performance prejudiced the defense in that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hunt v. Lee*, 291 F.3d 284, 289 (4th Cir. 2002) (citing *Strickland*, 466 U.S. at 687-90, 694) (internal quotation marks omitted). The district court denied relief on this claim, finding both that counsel's performance was objectively reasonable, and "[m]ost importantly," that Swisher could not show prejudice from any errors of counsel because"the jury heard substantial evidence to support findings of vileness and future dangerousness,"[8] including physical evidence of the circumstances of the crime, Swisher's own confession,[9] and evidence that Swisher had been caught with a razor blade and a

---

[8]Virginia's death penalty statute provides that before a sentence of death is imposed, the court or jury must find either a probability of future dangerousness "or that his conduct in committing the offense for which he stands charged was outrageously or wantonly vile." Va. Code Ann. § 19.2-264.2 (Michie 2000). While the statute leaves significant discretion in the hands of the jury, *see Buchanan v. Angelone*, 522 U.S. 269, 276 (1998), it leaves no doubt that a finding either of future dangerousness or vileness is sufficient to support imposition of the death penalty.

In Swisher's case, the jury was presented with a verdict form that contained five sample verdicts, which may be briefly summarized as follows: (1) both aggravating factors demonstrated, punishment fixed at death; (2) future dangerousness demonstrated, punishment fixed at death; (3) outrageous or wanton vileness of offense demonstrated, punishment fixed at death; (4) punishment fixed at life; (5) punishment fixed at life plus a fine. (J.A. at 490-91.) The jury selected the first option, unanimously finding that *both* aggravating factors were demonstrated beyond a reasonable doubt. (J.A. at 490.)

[9]The facts of the murder were uncontroverted. Nearly all of the details, including the rape and the facts that Swisher cut Snyder's throat and threw her in the river, were contained in his confession to the police, which was submitted to the jury. The only details added by Ridgeway's testimony were Swisher's query, "Are you dead yet?" after he had thrown Snyder in the river and his statement that he "felt like he could do it again."

"shank" in his cell while awaiting trial at the local jail and that he had repeatedly threatened jailers during that time. (J.A. at 723-24.)

Because Swisher has not shown that reasonable jurists would find the district court's assessment of the claims debatable or wrong, we deny a COA as to this claim.

## C.

Swisher also asserts that the Commonwealth, in violation of *Brady*, failed to turn over to his counsel evidence that Ridgeway sought and received a reward in exchange for his testimony. The district court found that this claim, which Swisher never presented in state court, was "clearly unexhausted," but elected to deny the claim on its merits pursuant to 28 U.S.C.A. § 2254(b)(2) (stating that an application for a writ of habeas corpus in federal court may be denied on the merits, notwithstanding the applicant's failure to exhaust the remedies available in state court). Relying on the evidence of the vileness of Swisher's crime and his future dangerousness, which it had previously discussed, the district court concluded, "[g]iven the strength of other evidence before the jury in support of vileness and future dangerousness, there is no reasonable probability that even the elimination of Ridgeway's testimony would cause a reasonable factfinder to vote for life."[10] (J.A. at 741.) We again assess whether jurists of reason would find the district court's assessment of Swisher's claim debatable or wrong. *Slack*, 529 U.S. at 484.

---

[10]Swisher asserts also that he was entitled to an evidentiary hearing to develop the basis for this claim in the district court, arguing that the bar imposed by 28 U.S.C.A. § 2254(e)(2) to such evidentiary hearings where "the applicant has failed to develop the factual basis of a claim in State court proceedings" is inapplicable because he "was unable to develop his claim in state court despite diligent effort," (Appellant's Br. at 20 (citing *Williams v. Taylor*, 529 U.S. 420, 437 (2001) (*M. Williams*))). Despite awareness of the grounds for this claim in state court (as demonstrated by his counsel's questioning of Ridgeway about the reward), Swisher did not raise a *Brady* claim on this basis or seek an evidentiary hearing in state court. *See M. Williams*, 529 U.S. at 437 ("Diligence will require, in the usual case, that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law.").

It is not entirely clear what evidence or impeachment material Swisher asserts should have been produced. His primary contention appears to be that the Commonwealth had an obligation to turn over evidence that after trial Ridgeway received the reward. He also suggests, however, that Ridgeway "received an explicit promise" before trial that he would receive the reward in exchange for his testimony (Appellant's Br. at 21), and that Ridgeway testified "in hopes of receiving" the reward (Appellant's Br. at 20). To establish a *Brady* claim, a defendant must demonstrate not only the existence of evidence favorable to the defendant that was suppressed by the government, but also a "reasonable probability" that the result of the proceedings would have been different had the evidence been disclosed. *See Jones v. Cooper*, 311 F.3d 306, 314 n.14 (4th Cir. 2002).

Even accepting Swisher's allegations as true, we cannot find that any reasonable jurists would conclude that the result of any proceeding in this case would have been different. In rejecting Swisher's claim, the district court referred to the admitted facts of Snyder's murder and the evidence that Swisher had been caught with a shank and a razor blade in his cell while awaiting trial at the local jail, and that he repeatedly threatened his jailers during that time. Based on this evidence, the district court's conclusion that Swisher would have been convicted of capital murder and sentenced to death even if Ridgeway's testimony had been completely impeached by evidence that he was promised, and later received, a reward for his testimony is not debatable. Because Swisher has not shown that reasonable jurists would find the district court's assessment of the claims debatable or wrong, we deny a COA as to this claim.

### III.

For the reasons stated above, Swisher's application for a COA is denied and the appeal is dismissed.

*DISMISSED*