UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DENNIS MITCHELL ORBE,
            *Petitioner-Appellant,*

v.

WILLIAM PAGE TRUE, Warden,
Sussex I State Prison,
            *Respondent-Appellee.*

No. 03-4

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-01-1845-A)

Argued: September 23, 2003

Decided: December 11, 2003

Before WILLIAMS and TRAXLER, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Michele Jill Brace, VIRGINIA CAPITAL REPRESEN-
TATION RESOURCE CENTER, Charlottesville, Virginia, for
Appellant. Katherine P. Baldwin, Senior Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellee. **ON BRIEF:** Robert L. Jenkins, Jr., BYNUM & JENKINS,
P.L.L.C., Alexandria, Virginia, for Appellant. Jerry W. Kilgore,

Attorney General of Virginia, OFFICE OF THE ATTORNEY GEN-
ERAL, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

## OPINION

PER CURIAM:

Dennis Mitchell Orbe was convicted by a Virginia jury of capital
murder, robbery, and two related firearm offenses. He was sentenced
to death for the murder, plus sixty years imprisonment for his other
convictions. After unsuccessfully challenging his convictions in state
court on direct review and in state habeas proceedings, Orbe filed a
petition for writ of habeas corpus in federal district court. *See* 28
U.S.C.A. § 2254 (West 1994 & Supp. 2003). We previously granted
a certificate of appealability as to five claims. We now affirm.

### I.

During the early morning hours of January 24, 1998, Orbe shot and
killed Richard Burnett, a convenience store clerk at a gas station in
York County, Virginia, while committing a robbery of the store. The
entire incident was captured on videotape by the store's security cam-
era. The following facts are taken from the opinion of the Virginia
Supreme Court on Orbe's direct appeal of his convictions and sen-
tence:

> Near 3:38 a.m. on January 24, 1998, the defendant entered
> the convenience store, walked up to the check-out counter
> where Richard Sterling Burnett was working as a clerk, and
> pointed a revolver at Burnett's chest. After Burnett opened
> the cash register drawer, the defendant shot him in the chest.
> As Burnett was clutching his chest and struggling to remain
> in a standing position, the defendant walked around the

counter, reached into the cash register drawer, and removed some money from it. He then fled from the store.

A short while later, a customer at the convenience store discovered Burnett's body and called for emergency assistance. F.T. Lyons, an investigator with the York County Sheriff's Office, arrived on the scene about 4:25 a.m. Investigator Lyons found Burnett's body "on the floor . . . behind the register." He collected several items from the store for evidentiary purposes, including the video tape recording. He took the video tape to the sheriff's office where he used computer equipment to view it "frame by frame." Lyons captured images from the video tape, digitized and saved them, and then printed several of the images. He distributed those printed images to area law enforcement agencies and the media.

*Orbe v. Commonwealth*, 519 S.E.2d 808, 810 (Va. 1999) (footnote omitted). Although Orbe was quickly identified as the gunman from the still images obtained from the videotape, he was not apprehended until January 31, 1998, after police officers chased him by car and on foot through the streets of Richmond. When apprehended, Orbe had a partially loaded revolver in the waistband of his pants, which forensics matched to the bullet removed from Burnett's chest.

Orbe was ultimately tried and convicted in York County of the capital murder of Burnett, *see* Va. Code Ann. § 18.2-31.4 (Michie 1996); robbery, *see* Va. Code Ann. § 18.2-58 (Michie 1996); and two counts of using or displaying a firearm while committing murder and robbery, respectively, *see* Va. Code Ann. § 18.2-53.1 (Michie 1996).

A capital sentencing proceeding was then held, during which the Commonwealth sought imposition of a sentence of death based upon the aggravating circumstance of future dangerousness. *See* Va. Code Ann. § 19.2-264.4 (Michie 2000). The evidence in support consisted of Orbe's criminal actions during the week before and after the murder.

The first incident occurred three days before the murder when Mark Scougal and Lois Jones came home and found Orbe in their

bedroom. Orbe "pointed a gun at Scougal and ordered Scougal to drive him 'somewhere else' because he was hiding from the police." *Orbe*, 519 S.E.2d at 811. During the confrontation, Jones retrieved a gun and threatened Orbe. Orbe fired two shots at Jones, one of which struck her in the leg. Orbe then demanded Scougal's car keys, but fled the scene when Scougal refused. The second incident occurred later that day. Orbe approached Charles Powell and William Bottoms, who were sitting just outside Bottoms's home in Richmond. Orbe "ordered [the men] to walk to the rear of the house" at gunpoint and told them "that he [had] nothing to lose." *Id.* (internal quotation marks omitted). He then took Powell's car, but left without harming the men.

The third incident occurred six days after the murder. Orbe, who had again entered a private residence, approached three women who had arrived to perform cleaning services and threatened them at gunpoint. After ordering the women to get down and hitting one between the shoulder blades in the process, he made the women crawl on their stomachs into a bedroom closet. He then nailed a piece of plywood across the closet door. Orbe took money and other valuables from the victims and fled in one of their vehicles. The women were released several hours later when the owners returned home.

The jury also heard evidence in mitigation. Orbe's stepfather, Willis Branch, and mother, Brigitte Branch, offered testimony about Orbe's difficult and abusive childhood. They also offered testimony about Orbe's long struggle with substance abuse, his marital and financial problems, and his depression and withdrawal. In particular, the Branches and Linda Fincher, a close friend of Orbe's during the year leading up to the murder, highlighted a notable change in Orbe's behavior in the months prior to the crime spree and murder. According to each witness, Orbe became alarmingly depressed and withdrawn after the collapse of his marriage and, in particular, during the two months prior to the murder.

Dr. Thomas Pasquale, a clinical psychologist, was appointed to evaluate Orbe for purposes of mitigation and risk assessment regarding Orbe's future dangerousness. In addition to reviewing various written materials provided to him concerning Orbe and the charged crimes, Dr. Pasquale personally interviewed and tested Orbe on several occasions prior to the trial and interviewed Orbe's mother to cor-

roborate the history provided. At trial, he offered extensive testimony regarding Orbe's abusive and troubled childhood, and his increasing problems with depression in the year leading up to the murder, in part related to the collapse of his marriage and his perceived failure as a husband and father. Among other things, Dr. Pasquale testified that Orbe struggled with feelings of depression, distortion, loneliness, fear, hopelessness, powerlessness, and worthlessness, and that Orbe contemplated suicide on a number of occasions in the months just prior to the murder. Dr. Pasquale also testified regarding Orbe's history of substance abuse, and his problems with impulse control dysfunction. Dr. Pasquale testified that Orbe acknowledged his crime and was remorseful. Finally, the defense presented favorable testimony from the jail administrator where Orbe was incarcerated concerning Orbe's good behavior during his incarceration.

At the conclusion of the sentencing phase, the jury returned a recommendation that Orbe be sentenced to death for the murder conviction. The death sentence was imposed by the trial court for the capital murder, along with a 50 year sentence for the robbery, and five-year sentences for both of the firearm offenses. *See id.* at 809. The Virginia Supreme Court upheld Orbe's conviction and death sentence on appeal, *see id.* at 810, and the United States Supreme Court denied Orbe's petition for writ of certiorari, *see Orbe v. Virginia*, 529 U.S. 1113 (2000). Orbe filed an original petition for a writ of habeas corpus before the Supreme Court of Virginia, which was dismissed, and the United States Supreme Court again denied certiorari review. *See Orbe v. Taylor*, 534 U.S. 1139 (2002).

Orbe filed the instant § 2254 petition for habeas relief in the United States District Court in May 2002. Upon motion of the state, the district court dismissed Orbe's petition, denied Orbe's subsequent motion to alter or amend the judgment, and denied Orbe's application for a certificate of appealability. Orbe then filed an application for a certificate of appealability with this court. Because at least one judge of the panel concluded that Orbe had "made a substantial showing of the denial of a constitutional right," 28 U.S.C.A. § 2253(c)(2) (West Supp. 2003), with respect to five of his claims, we granted a certificate of appealability to consider (1) whether the prosecutor's decisionmaking was tainted by improper considerations of race (Claim I(A)), (2) whether the trial court improperly excused a venireman

from jury service (Claim II(A)), (3) whether defense counsel was ineffective by unreasonably failing to protect Orbe from the prosecutor's improper considerations of race (Claim I(B)), (4) whether defense counsel was ineffective by unreasonably failing to challenge the exclusion of the venireman (Claim II(B)), and (5) whether defense counsel rendered ineffective assistance during the sentencing phase of Orbe's trial by unreasonably failing to investigate, obtain and present additional mitigating evidence (Claim III).

We denied a certificate of appealability for the remaining claims. For the reasons that follow, we now affirm the district court's dismissal of Orbe's petition for a writ of habeas corpus.

## II.

Orbe's first two claims — that the prosecutor's decision was tainted by improper considerations of race (Claim I(A)), and that the trial court improperly excluded Velma Conner from jury service (Claim II(A)) — were not raised by Orbe until state habeas review. Because Orbe did not raise either claim at trial or on appeal, the Virginia Supreme Court ruled that they were procedurally barred pursuant to *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) (holding that claims not properly raised on direct appeal will not be considered as a basis for collateral relief).

Orbe also raised for the first time on state habeas review, as related Sixth Amendment claims, his next two claims — that his defense counsel was constitutionally ineffective by failing to protect Orbe from the prosecutor's consideration of race and by failing to challenge the exclusion of Venireman Conner at trial or on direct appeal (Claims I(B) and II(B)). The Virginia Supreme Court rejected these claims as well, ruling that Claim I(B) was without merit because Orbe had produced insufficient proof of racial discrimination in the prosecution of the case, and that Claim II(B) failed because Orbe did not demonstrate that his counsel's failure to object to the dismissal of the juror under the circumstances amounted to deficient performance or that he was prejudiced by his counsel's failure to raise the issue on direct appeal.

## A.

Like the district court, we must first determine whether Orbe has procedurally defaulted federal habeas review of his race discrimination and juror exclusion claims (Claims I(A) and II(A)) because he failed to raise them on direct appeal to the Virginia Supreme Court. The district court concluded that the claims were procedurally defaulted. We agree.

It is well settled that a federal habeas court may not review constitutional claims when a state court has declined to review them on the merits "pursuant to an independent and adequate state procedural rule, . . . unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Harris v. Reed*, 489 U.S. 255, 262 (1989). The question of whether a particular state procedure is independent and adequate is one of federal, not state, law. *See Johnson v. Mississippi*, 486 U.S. 578, 587 (1988). "A state rule is adequate if it is firmly established and regularly or consistently applied by the state court, and independent if it does not depend on a federal constitutional ruling." *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003) (citations, internal quotation marks, and alteration omitted).

In this case, there is no dispute that the Virginia court did not consider Orbe's constitutional Claims I(A) and II(A) on state habeas review because they were procedurally barred by a regularly and consistently applied state court rule. *See Royal v. Taylor*, 188 F.3d 239, 245 (4th Cir. 1999) (noting that "*Slayton* is a valid state procedural rule, independent of the federal question and adequate to support the judgment"). Thus, we may not review the claims on the merits unless Orbe demonstrates "cause for the default and actual prejudice" or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Brown*, 319 F.3d at 169.

Orbe contends that he is entitled to federal review of the merits of his race discrimination and juror exclusion claims because he has demonstrated cause and prejudice based upon his defense counsel's

failure to pursue the matters at the trial stage. *See Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (constitutionally ineffective assistance of counsel may establish cause for a procedural default). Thus, Orbe has presented, as cause for his procedural default of the underlying constitutional claims (Claims I(A) and II(A)), ineffective assistance of counsel claims that are identical to the Sixth Amendment ineffective assistance claims he has set forth separately in Claims I(B) and II(B) of his petition.

### B.

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, and that such assistance be effective, *see Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim before the state court, Orbe was required to establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," *id.* at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Because there is no dispute that the state habeas court adjudicated the merits of Orbe's ineffective assistance of counsel claims (Claims I(B) and II(B)), the district court properly evaluated these claims under the standard of review set forth in § 2254(d). Under this standard, a federal habeas court is precluded from granting habeas relief unless it concludes that Virginia's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362 (2000). It is less clear, however, that the district court appropriately applied this same deferential standard of review to Orbe's assertion that he has demonstrated cause to excuse his procedural default of the race discrimination and juror exclusion claims

(Claims I(A) and II(A)) because his counsel was constitutionally ineffective in failing to protect him from the prosecutor's consideration of race and the trial court's exclusion of the venireman at trial and on direct appeal.

At least one circuit court has addressed a similar "preliminary puzzle." *See Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003). As correctly noted by the *Lee* court, it is "established that the assertion of ineffective assistance as a cause to excuse a procedural default in a § 2254 petition is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Id.*; *see Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that a defendant's claim of ineffective assistance of counsel as cause for procedural default in a § 2254 petition is a constitutional claim that is also subject to being procedurally defaulted if it was not timely raised before the state court). However, as also correctly observed by the *Lee* court, *Edwards* does not tell us whether "the same claim of ineffective assistance of counsel get[s] reviewed differently when presented merely as cause for a procedural default as opposed to being presented in a petition as the basis in the first instance for habeas relief[.]" *Lee*, 328 F.3d at 901.

By engrafting the deferential standard of § 2254(d) onto the "cause" prong of the federal doctrine of procedural default, the district court effectively held that § 2254(d) compels the conclusion that federal habeas courts are precluded from reviewing a procedurally defaulted federal constitutional claim which has not been reviewed on the merits by *any* court, even if we would independently find that counsel was constitutionally ineffective for failing to raise the claim on direct appeal — unless, of course, we could also say that the state court's contrary finding was an unreasonable application of Supreme Court precedent. *Cf. Mitchell v. Esparza*, 124 S. Ct. 7, 11 (2003) (per curiam) (noting that under § 2254(d)'s standard of review, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous"). However, at least one other district court has reached a contrary conclusion, holding that procedural default remains an independent federal doctrine and, accordingly, that we determine *de novo* whether a state court defendant has demonstrated cause to excuse his or her failure to raise a constitutional claim before the state courts.

*See Holloway v. Horn*, 161 F.Supp.2d 452, 478 n.12 (E.D. Pa. 2001); *Holland v. Horn*, 150 F.Supp.2d 706, 747 (E.D. Pa. 2001). However, in this case, we find it unnecessary to resolve the issue. Even if we assume that de novo review is the appropriate one to apply to the "cause" determination, Orbe has failed to demonstrate that his counsel was ineffective, as we explain below. Accordingly, Orbe has not established cause for his procedural default of Claims I(A) and II(A), and we affirm the district court's dismissal of these claims.

III.

We begin with Orbe's claim that defense counsel failed to protect Orbe from the prosecutor's improper consideration of race in the decisionmaking process. Specifically, Orbe claims that the prosecutor considered race in making her decision to charge Orbe with capital murder and in refusing defense counsel's offer to have Orbe plead guilty to murder in exchange for a sentence of life imprisonment, and that his defense counsel unreasonably failed to recognize the discrimination and pursue it to the benefit of his client.

The alleged "evidence" of race discrimination relied upon by Orbe arose during a conversation between the prosecutor and defense counsel prior to trial. Defense counsel approached the prosecuting attorney to discuss the possibility of Orbe pleading guilty to a murder charge in exchange for a life sentence. According to Orbe's lead defense counsel, the prosecutor "told [him] that she could not agree to give a white man (Mr. Orbe) a life sentence when she had just asked for and obtained a death sentence for a black man (Daryl Atkins) in an unrelated capital murder." J.A. 615. The alleged statement highlighted by Orbe, however, was only a part of the conversation. Defense counsel also related that the prosecutor told him "that the murder of Richard Burnett was unusual in York County and considered to be a very serious crime," that "the crime was as deserving of the death penalty as Daryl Atkins' case, that she intended to treat them the same and that she would not offer an agreement because she believed a jury should decide the appropriate punishment." J.A. 618. Although the prosecutor also "comment[ed] that people would say a plea agreement was offered to Orbe solely because he was white," J.A. 618, defense counsel made it clear that he "did not think [the prosecutor's] com-

ments were racially motivated," and that "[i]f so, [he] would have raised it with the Court." J.A. 619.

The prosecutor offered a similar account of the conversation between them. She stated that she told defense counsel that the Atkins case was the only other serious crime in York County of which she was aware, that she would not consider any plea agreement, that "just as in Atkins' case, [she] believed a jury should decide what the appropriate punishment would be," that she "considered Orbe's case to be just as serious as Atkins' case and would not treat it any differently," and that "only as an afterthought, [she] remarked that [she] could imagine that if there was such a plea agreement in Orbe's case, someone might allege that he received special treatment only because he was white." J.A. 620.

On state habeas, the Virginia Supreme Court rejected Orbe's claim that his defense counsel was ineffective for failing to pursue a claim that he had been subjected to selective prosecution on account of his race. Noting that both defense counsel and the prosecutor averred that the statement was not intended or considered to be racially motivated, the Virginia court concluded that the ineffective assistance of trial counsel claim "fail[ed] for lack of proof that there was racial discrimination in the prosecution of the case." J.A. 598.

Orbe contends that he demonstrated ineffective assistance of defense counsel, but not just because defense counsel failed to raise a claim of selective prosecution based upon race discrimination. Rather, Orbe contends that defense counsel was ineffective because he failed to take advantage of the prosecutor's comment and coerce her into making the deal. Specifically, Orbe contends that defense counsel should have "confront[ed] the prosecutor privately, explain[ed] that her statement created the appearance of racial discrimination, and encourage[d] her to accept a plea agreement in order to avoid public exposure and political repercussions for her unfortunate prior statement." Appellant's Brief at 18. Barring this, Orbe contends that defense counsel should have moved to recuse the prosecutor.

We disagree. Decisions to prosecute "may not be based on an unjustifiable standard such as race, religion, or other arbitrary classifi-

cation." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks omitted); *Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978) (noting that "an unjustifiable standard such as race, religion, or other arbitrary classification . . . may play no part in [the prosecutor's] charging decision"). However, prosecutors have "broad discretion" in such matters and a "presumption of regularity supports their prosecutorial decisions." *Armstrong*, 517 U.S. at 464 (internal quotation marks omitted); *see also Rowsey v. Lee*, 327 F.3d 335, 343 (4th Cir. 2003) ("To succeed on a selective-prosecution claim, a defendant must demonstrate that the prosecutor's decision was based on an unconstitutional motive." (internal quotation marks omitted)). "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Armstrong*, 517 U.S. at 465 (internal quotation marks omitted).

Having carefully reviewed the account of the plea conversation between defense counsel and the prosecutor, as well as the information regarding the Atkins case, we cannot conclude that the prosecutor's mere mention of race amounted to clear evidence that she decided to indict Orbe for capital murder and rejected his plea offer because of his race. As noted by the district court, Orbe "does not contend that he was treated *differently* from Atkins on account of their different races." *Orbe v. True*, 233 F.Supp.2d 749, 767 (E.D. Va. 2002) (emphasis added). Rather, Orbe complains because "he was treated *the same* as Atkins, when he should not have been, because their races differed." *Id.* (emphasis added). However, Orbe has failed to present clear evidence that the prosecutor violated his rights to equal protection. On the contrary, the prosecutor's statements are more fairly read as evidencing her intent to be evenhanded in her approach to the similar murder cases *regardless* of the race of the defendant. And, we certainly cannot say that defense counsel, who likewise did not perceive the comment to be racially-motivated, was constitutionally ineffective for failing to raise a selective prosecution claim on appeal or for failing to exploit the prosecutor's mere mention of Orbe's race during the conversation. Based on the above discussion, we also hold that the state court's resolution of Claim I(B) was not contrary to or an unreasonable application of clearly established federal law.

IV.

Orbe's next claim is that his defense counsel was ineffective for failing to object to the trial court's dismissal of Venireman Conner for cause based upon Conner's responses to questions about whether she could impose the death penalty.

During qualification of a capital jury, the trial court may exclude a potential juror based upon his or her personal views on capital punishment if "the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (internal quotation marks omitted). "[T]he question of juror bias is to be resolved by the trial judge's assessment of demeanor and credibility, and . . . such assessments are to be accorded a presumption of correctness under 28 U.S.C. § 2254(d)." *Maynard v. Dixon*, 943 F.2d 407, 415 (4th Cir. 1991). Juror bias need not be proved with "unmistakable clarity." *Wainwright*, 469 U.S. at 424 (internal quotation marks omitted). Rather, when juror responses are less than clear, "the determination made by the trial court, based on its eyeing the juror, is presumed to be consistent with the applicable standard." *Maynard*, 943 F.2d at 415.

During the qualification phase of the case, Conner consistently expressed uncertainty in her ability to act as an unbiased juror capable of imposing the death penalty if Orbe were convicted of capital murder. She first expressed uncertainty as to whether information she had obtained from the news media about the murder would affect her impartiality:

> THE COURT: So all of you have heard something about [the case] from the news media or other sources. That's fine.
>
> Would this information that you've received from the news media affect your impartiality in this case?
>
> . . . I need to find out whether you can stand impartial even though you've seen something about it on TV or heard something about it by radio or read about it in the newspaper.

VENIREMAN CONNER: Yeah, I think so.

THE COURT: You think what, it affects your impartiality or doesn't affect it?

VENIREMAN CONNER: It doesn't. I don't know.

J.A. 31-32. Later, when Venireman Conner was asked whether she had an opinion that would prevent her from convicting someone of an offense punishable by death, she again expressed uncertainty and hesitancy about her ability to do so:

THE COURT: Mrs. Conner, do you have an opinion that would prevent you from convicting someone of an offense that is punishable by death?

VENIREMAN CONNER: I didn't think so at one time, that death would not be a problem. But when I got — once I got the subpoena, it is a problem for me.

THE COURT: Okay. I understand that.

VENIREMAN CONNER: I have to be honest with you.

THE COURT: I want you to be honest with me.

And you feel that you just could not impose the death penalty if you found the Defendant guilty?

VENIREMAN CONNER: The evidence would have to be very strong for me to do that.

J.A. at 34. After questioning the other jurors about their ability to impose the death sentence, the court excused Venireman Conner from further service, without objection from either side:

THE COURT: Ms. Conner, would you feel better if you were relieved of the duty of having to sit in judgment of somebody that you might have to impose the death penalty?

VENIREMAN CONNER: I think so as far as the death penalty, yes.

THE COURT: All right. We're going to . . . honor your thoughts and your conscience, and we're going to find that you could not stand without bias or partiality because of your beliefs. And that's no . . . discredit to you.

J.A. 35.

The state habeas court ruled that Orbe failed to establish that defense counsel's performance was constitutionally ineffective. Based upon the entire voir dire of Venireman Conner, it could not "say that counsel's decision not to object 'fell below an objective standard of reasonableness.'" J.A. 599 (quoting *Strickland*, 466 U.S. at 688).

We agree. Were we adjudicating the merits of a claim that the trial court improperly dismissed Venireman Conner over defense counsel's unsuccessful objection, our task would be a more difficult one. On the cold record, it is not unquestionably apparent that Venireman Conner's responses demonstrated that her "views would prevent or substantially impair the performance of h[er] duties as a juror in accordance with h[er] instructions and h[er] oath." *Wainwright*, 469 U.S. at 424 (internal quotation marks omitted). But, we would also be required to remain mindful of the substantial deference owed to a trial judge's ability to assess the demeanor of the witness under questioning. *See Maynard*, 943 F.2d at 415. In any event, this is not the question before us. We are called upon to determine whether Orbe has demonstrated that his defense counsel was constitutionally ineffective for failing to object when the trial judge decided to "honor [Ms. Conner's] thoughts and [her] conscience" and excuse her from further service in Orbe's case. J.A. 35. Although Orbe obtained affidavits from trial counsel in support of his state habeas petition, Orbe has presented no evidence from defense counsel regarding this issue. There is no indication, for example, that defense counsel did not object because he failed to appreciate the possible error. On the contrary, all indications from the transcript are that Orbe's defense counsel understood his role during the process of jury selection. We can envision any number of reasons why defense counsel may have strategically concluded that Venireman Conner would best be excused, and it may

even be that counsel was pleased not to have to use a peremptory challenge to accomplish the same result, although no such reasons have been provided to us.

When reviewing claims that a defendant's trial counsel was ineffective, we are not at liberty to upset a state court verdict based upon a presumption that counsel was incompetent merely because he did not make an issue out of what appears, on a cold record, to have been a potential issue.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (citations and internal quotation marks omitted). On the contrary, we must remain mindful of the deference owed to defense counsel, the presumption that the assistance given was effective, and that the burden is placed upon the defendant to prove ineffectiveness:

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally compe-

tent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.

Orbe has presented no evidence that would support a finding that defense counsel's failure to object reflected anything more than his reasonable decision, based upon his observation of Venireman Conner's demeanor, that she was too indecisive or uncomfortable with the task at hand to be a favorable or effective juror. The only "evidence" that counsel was ineffective is, in actuality, Orbe's argument that, had counsel objected, it would have been error for the judge to dismiss the juror *over* that objection. Given the broad range of discretion *Strickland* demands that we give defense counsel in such matters, the former does not necessarily flow from the latter or overcome the presumption of competence he is entitled to under the applicable precedents. Accordingly, Orbe has failed to present sufficient proof that counsel was constitutionally ineffective for failing to object to the trial court's decision to dismiss Venireman Conner. Based on the above discussion, we also hold that the state court's resolution of Claim II(B) was not contrary to or an unreasonable application of clearly established federal law.

V.

Orbe's final claim is that his defense counsel was constitutionally ineffective for failing to adequately investigate Orbe's background and personal circumstances and to present related mitigating evidence to the jury. Specifically, Orbe asserts that defense counsel: (1) failed to adequately investigate and present to the jury Orbe's history of sexual, physical and emotional abuse; (2) failed to obtain and present additional mitigating evidence from family and friends regarding this abuse, his troubled childhood, and his struggles with mental illness and depression; (3) failed to present evidence that Orbe probably suf-

fered from Bipolar Disorder, instead of or in addition to evidence of his depression and suicidal thoughts; and (4) failed to obtain mental health records that would have demonstrated that Orbe was suicidal and had sought in-patient treatment eight months prior to the murder.

## A.

Because the Virginia Supreme Court adjudicated the merits of Orbe's Sixth Amendment claims related to mitigation evidence, we may not grant a writ of habeas corpus unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C.A. § 2254(d).

A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts," *Williams*, 529 U.S. at 413. A state court decision "involve[s] an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case," *Williams*, 529 U.S. at 413. An objectively "*unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

The "clearly established" Supreme Court precedent which guides our review of this claim under § 2254(d) is the familiar two-part test set forth in *Strickland*. Orbe must show that his "counsel's representation fell below an objective standard of reasonableness," measured by

the "prevailing professional norms," *Strickland*, 466 U.S. at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See also Wiggins v. Smith*, 123 S. Ct. 2527, 2535 (2003) (noting that the "petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense").

In death penalty cases, defense counsel is required to undertake reasonable investigations into possible mitigating evidence that could be presented during the penalty phase. *See id.* at 2535-36; *Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). However, courts employ a highly deferential review of defense counsel's decisions as to what evidence should be presented in mitigation. *See Byram v. Ozmint*, 339 F.3d 203, 209 (4th Cir. 2003). "[T]here is a presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case." *Wiggins* 123 S. Ct. at 2541.

In preparation for the mitigation case, Orbe's defense counsel interviewed Orbe, Orbe's mother (Brigette Branch), Orbe's current stepfather (Willis Branch), a close friend of Orbe's at the time of the murder (Linda Fincher), and the administrator of the jail where Orbe was incarcerated. Information obtained from these interviews was provided to Dr. Pasquale, who was appointed to assist the defense. Dr. Pasquale, in turn, also interviewed Orbe and Orbe's mother, as well as jail personnel and Orbe's former mother-in-law.

During the sentencing phase, defense counsel presented the testimony of the Branches, Linda Fincher, and Dr. Pasquale. Orbe refused to testify during the mitigation phase against the advice of his counsel. However, the testimony that was presented painted a picture of Orbe's troubled childhood and the physical and emotional abuse he suffered at the hands of Clyde Sizemore, his mother's ex-husband. The evidence also highlighted his ongoing battles with substance

abuse from an early age, his financial and marital problems, the collapse of his marriage and loss of contact with his children, and his increasing depression and thoughts of suicide in the months leading up to the murder.

In the course of his evaluation of Orbe, Dr. Pasquale learned that Orbe, his mother, and two brothers were abandoned by his alcoholic natural father when Orbe was less than two years old. His mother remarried Sizemore, an alcoholic who was in the military. Orbe was raised in Germany for most of his childhood in this military family setting. According to Dr. Pasquale, Orbe told him that he often observed Sizemore beating his mother, and that he suffered emotional abuse. Orbe denied that he had been physically abused, but Dr. Pasquale testified that Orbe's mother did relate that Orbe was *both* physically and emotionally abused by Sizemore. Dr. Pasquale also testified that Orbe, who registered within a range of low end average IQ and had a history of learning disabilities, did not do well in school academically and eventually dropped out. Orbe's older brother Glen was eventually sent back to the United States to live with a relative, but ran away and lost contact with his family for a number of years. Dr. Pasquale also related that Orbe had been badly beaten by a group of teenagers when he was seventeen years old.

Orbe's mother also testified during the sentencing phase of Orbe's trial, offering more details of Sizemore's physical and emotional abuse of Orbe. She testified that, after Sizemore returned from Vietnam, he was very abusive to all of her sons. According to Orbe's mother, Sizemore hit Orbe, called him names, told him he was "dumb and stupid," and taunted him with the fact that he "d[id not] even have a father" and "should have just . . . not even been born." J.A. 163. Orbe's mother also confirmed Orbe's long history of substance abuse, which was corroborated by Orbe's current stepfather and Linda Fincher. Orbe's mother and current stepfather testified that Orbe's natural father was an alcoholic, explained Orbe's marital and financial problems and their effect upon his demeanor, and related Orbe's increasing problems with depression and withdrawal in the months leading up to the murder.

### B.

Orbe's first contention is that counsel was constitutionally ineffective because he failed to adequately investigate and present evidence

that Orbe had been sexually abused by his grandfather when he was a very young child and failed to adequately convey the degree to which Orbe was subjected to physical and emotional abuse by Sizemore.

The basis for Orbe's current allegations of sexual abuse at the hands of his grandfather arises solely from an affidavit provided to Orbe's state habeas counsel by his older brother, Glen Orbe. In the affidavit, Glen claims that Orbe was subjected to sexual abuse by their grandfather in Germany when Orbe was between the ages of two and five years old. During his pre-trial interview with Dr. Pasquale, however, Orbe denied that he was subjected to anything other than emotional abuse as a child and, in his post-trial affidavit in support of state habeas, Orbe claimed to have no memories of his childhood prior to the age of seven or eight. Orbe's mother either was not aware of any such sexual abuse, or did not relate it to defense counsel, to Dr. Pasquale, or to the jury. Glen was sent back to the United States in 1979, when Orbe was in his early teens, and ran away shortly after his return. According to Orbe's mother, the family members lost touch with Glen until 1999, when her son Tony located him by searching on the Internet. Thus, Glen had absolutely no contact with Orbe or any other family members from the time he left Germany, when Orbe was 16 years old, until a year *after* the murder of Bennett.

Orbe also advances a related claim that the state court unreasonably concluded that defense counsel was not ineffective in the presentation of mitigation evidence because he failed to present additional testimony from Orbe's mother, Orbe's brothers, and Orbe's natural father concerning Orbe's family history of depression and substance abuse and the abuse inflicted upon him by Sizemore, and failed to present additional testimony provided by affidavit from Orbe's friend, Fincher, which elaborated upon her trial testimony regarding Orbe's depression, suicidal intentions, and substance abuse in the months leading up to the murders.

During the trial, however, Orbe's mother provided testimony of the physical and emotional abuse Orbe suffered at the hands of his first stepfather, Sizemore. She testified that Orbe's natural father was an alcoholic, that he had abandoned the family when Orbe was an infant,

and that Orbe did not have any contact with his natural father until just prior to the murder.

The state habeas court rejected Orbe's claim of ineffective assistance of counsel because Orbe had denied any prior physical abuse and because the jury heard the relevant evidence regarding the mental and physical abuse that Orbe had suffered. The state habeas court also considered the proffered additional evidence and ruled that, with the exception of the sexual abuse allegations advanced by Glen (which were denied by Orbe), the abuse evidence was adequately presented to the jury by those that were called to testify.

The district court likewise ruled that defense counsel was not ineffective in relying upon the information provided by the defendant and in failing to seek out Glen Orbe based upon the information obtained from Orbe and Orbe's mother and stepfather. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information."); *Barnes v. Thompson*, 58 F.3d 971, 979-80 (4th Cir. 1995) (holding that defense counsel "may rely on the truthfulness of his client and those whom he interviews in deciding how to pursue his investigation"). With regard to the "additional" evidence of emotional and physical abuse, this evidence was presented in the form of affidavits from those witnesses who testified during the sentencing phase, elaborating upon the testimony that they gave. Thus, the district court noted that most of the information had already been presented at trial.

For the reasons set forth in the district court's opinion, we also cannot say that defense counsel's failure to discover Glen Orbe's allegations of sexual abuse or to present more elaborate testimony of the emotional and physical abuse suffered by Orbe and his other problems now offered by his friend and family fell below an objective standard of reasonableness, or that the state court's adjudication of this claim was contrary to or involved an unreasonable interpretation of applicable Supreme Court precedent.

## C.

Orbe's next claim is that his defense counsel was ineffective because he failed to present evidence that Orbe likely suffered from Bipolar Disorder. As noted by the state court and district court, Dr. Pasquale, who was appointed to assist the defense in preparation of mitigation evidence, interviewed and performed psychological tests of Orbe on several occasions and was well aware of the mental health symptoms that Orbe contends support a diagnosis of Bipolar Disorder. Dr. Pasquale diagnosed Orbe as suffering from major depression, recurrent, with additional symptoms of suicidal intent, loss of interest in everything in life, and severe agitation, and testified that Orbe underwent "paranoic decompensation" during his crime spree. In addition, Dr. Pasquale testified that Orbe suffered from alcohol dependence and impulse control dysfunction, characterized by aggressive, violent and impulsive acting out. But, he did not diagnose Orbe with Bipolar Disorder.

The state habeas court ruled that "[h]aving received a diagnosis from Dr. Pasquale, counsel was not obliged to seek another, potentially more favorable diagnosis." J.A. 608; *see Poyner v. Murray*, 964 F.2d 1404, 1419 (4th Cir. 1992) (holding that "[t]he mere fact that his counsel did not shop around for a psychiatrist willing to testify to the presence of more elaborate or grave psychological disorders simply does not constitute ineffective assistance"). The district court likewise denied federal habeas relief, ruling that "even assuming *arguendo* that Dr. Pasquale's diagnosis was flawed, Orbe has not shown that counsel was unreasonable in relying upon it or in failing to conduct a more detailed investigation of his own." *Orbe*, 233 F.Supp.2d at 783. Like the district court, we cannot say that the Supreme Court of Virginia was unreasonable in its dismissal of this claim under the performance prong of *Strickland*.

## D.

Finally, we reject Orbe's claim that defense counsel was ineffective for failing to obtain medical records from Chesterfield Mental Health Services, which would have supported Dr. Pasquale's diagnosis that Orbe was deeply depressed, had suicidal tendencies, and that he had sought and been denied in-patient treatment for his problems months

before the murder. The state habeas court ruled that Orbe had failed to demonstrate that counsel was ineffective because "[t]he records at issue report that [Orbe] expressed only suicidal ideation, but with no plan for, or actions taken toward, carrying out those thoughts. Not only would these records have discredited any claim that [Orbe] was depressed and seriously considering killing himself, they would have supported the Commonwealth's position that [Orbe] was not serious about taking his own life." J.A. 608. The district court, on the other hand, assumed that counsel was deficient for failing to obtain the records and dismissed the claim under *Strickland*'s "prejudice" prong:

> First, the Chesterfield records do not objectively corroborate Orbe's suicidal intent. They indicate only that Orbe reported he was suicidal, not that he was found suicidal by a treating physician or given treatment for suicidal tendencies. Indeed, the records show that he was refused treatment on that basis. Second, although the jury was not shown the Chesterfield records, they were informed that Orbe sought mental health treatment before the January crime spree. Finally, as brought out at trial, other statements and actions by Orbe indicate a strong ambivalence with regard to suicide, with or without the addition of the Chesterfield records. For these reasons, even assuming that the question of whether or not Orbe was suicidal at the time of the crime spree was relevant to the jury's verdict, it is unlikely that the presentation of the Chesterfield records would have significantly altered the jury's conclusion on that question. It follows that Orbe has not shown that there was a "reasonable probability" that presenting the Chesterfield records would have affected the outcome of the trial.

*Orbe*, 233 F.Supp.2d at 784 (footnote omitted). Having reviewed the record, we agree with the district court's disposition of this claim and Orbe's similar complaint that defense counsel unreasonably failed to present school records demonstrating that Orbe changed schools frequently, was a poor student, and was placed in special education classes also fails. The jury was presented with undisputed testimony that Orbe was part of a military family, that he struggled in school, was of low average intelligence, and that he suffered from learning disabilities. Thus, the substance of the evidence was presented to the

jury and there is no reasonable probability that the school records would have resulted in a different outcome.

Finally, like the district court, we have considered the totality of the evidence Orbe advances in support of all of his claims of ineffective assistance of counsel during the mitigation phase of his case and agree that, "when the mitigating and aggravating evidence is considered as a whole, there is no reasonable probability that the quantum of additional evidence that Orbe argues should have been presented at the sentencing phase of the trial would have affected the outcome." *Orbe*, 233 F.Supp.2d at 785. Thus, we affirm, largely on the basis of the reasoning set forth by the district court in its decision, the dismissal of Orbe's claim for habeas relief on the basis of ineffective assistance of counsel in the presentation of mitigating evidence.

## VI.

For the foregoing reasons, we affirm the district court's denial of Orbe's petition for writ of habeas corpus.

*AFFIRMED*