**Richard LONGWORTH, Petitioner,**

v.

**Jon E. OZMINT, Commissioner, South Carolina Department of Corrections; and Henry McMaster, Attorney General, State of South Carolina, Respondents.**

No. CIV.A. 3:02–0744–08.

United States District Court,
D. South Carolina.

Feb. 9, 2004.

David Grant Belser, Tanya Louise Davis, Belser and Parke, Asheville, NC, Robert Michael Dudek, SC Office of Appellate Defense, Columbia, SC, Amy E Ray, Asheville, NC, for petitioner.

Donald John Zelenka, SC Attorney General's Office, Columbia, SC, Donald John Zelenka, SC Attorney General's Office, Columbia, SC, for respondent.

### ORDER

BLATT, Senior District Judge.

The Petitioner is an inmate under a sentence of death which was entered by the Court of General Sessions for Spartanburg County on September 10, 1991. He filed this petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. This Court denied the Petitioner's request on November 3, 2003, and his motion to alter, amend or vacate the judgment on December 22, 2003. This matter is presently before the Court on the Petitioner's request for certificate of appealability.

■ The Petitioner correctly outlines the standard for determining whether a certificate of appealability should issue. Pursuant to 28 U.S.C. § 2253(c)(2), he must make a "substantial showing of the denial of a constitutional right." The United States Supreme Court has recently held that this requires petitioners to "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell,* 537 U.S. 332, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) (citations omitted). This does not require a showing that the appeal will succeed; granting a certificate of appealability is merely a "threshold inquiry." *Id.,* 537 U.S. at 336, 123 S.Ct. at 1039.

■ In *Swisher v. True,* 325 F.3d 225, 229 (4th Cir.2003), the Fourth Circuit outlined two related but separate inquiries for determining the issue. First, where constitutional claims were denied on their merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). On the other hand, where constitutional claims are denied on procedural grounds, the petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). While the existence of the death penalty is not in itself grounds for the grant of a certificate of appealability, in such a serious context any doubt as to whether one should issue must be resolved in the petitioner's favor. *See Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir. 2000).

The Petitioner requests a certificate of appealability of five distinct grounds: (1) this Court's refusal to conduct a *de novo* review of the Petitioner's claims; (2) this Court's rejection of the arguments in Ground 4 of the petition (mistrial based on undisclosed false statement); (3) this Court's rejection of the arguments in Ground 11 (attorney conflict of interest); (4) this Court's rejection of the arguments in Ground 15 (exculpatory evidence); and

(5) this Court's rejection of the arguments in Ground 19 (ineffective assistance of counsel). Each will be addressed in turn.

*Procedural Objection*

■ As to the procedural objection, the Court was legally bound to refuse *de novo* consideration of the entire petition based upon squarely-established law. *See Young v. Catoe*, 205 F.3d 750 (4th Cir. 2000); *Bell v. Ozmint*, 332 F.3d 229 (4th Cir.2003) (both holding that substantially adopting one party's position to the exclusion of another does not mean that there was no "decision" under § 2254). The Petitioner suggests, noting the courts' distaste for "rubber-stamping," that "reasonable jurists could consider setting a new precedent," and, as such, that the issue is "adequate to deserve encouragement to proceed further" under *Miller–El. See* 537 U.S. at 336, 123 S.Ct. at 1039.

The Court agrees that the Fourth Circuit has the authority to revisit a prior decision and modify the existing law. However, this Court's feels that its decision is legally sound and based upon explicit precedent. The Court simply cannot conclude that reasonable jurists could debate whether there is a substantial constitutional issue or whether the Court decided the issue correctly. *See Swisher*, 325 F.3d at 229. The Court denies a certificate of appealability on this issue.[1]

*Ground 4*

■ Ground 4 of the petition centers around a statement made at trial by Chief Deputy James Murray, who indicated that the Petitioner "knew what was going to happen" and did nothing to stop his cohort from shooting one of the two victims in the underlying crimes. This Court held that the statement was not false because Murray was simply giving his opinion of the

Petitioner's knowledge from the context of the Petitioner's statement, and that no prejudice resulted because the trial court gave an adequate curative instruction. This Court also rejected a claim that the statement, if true, was known by the prosecution prior to trial who failed to turn it over to the defense.

The Petitioner challenges each of these conclusions, arguing that the statement was "knowingly false," that there is a "reasonable likelihood" that prejudice resulted, and that the curative instruction did not cure this prejudice. The circumstances surrounding Murray's statement are more complicated than Murray simply giving his opinion. It was revealed at the PCR level that the prosecution became aware shortly before trial that the Petitioner may have said something to Murray about his foreknowledge, but for lack of a written record it asked Murray to say that the Petitioner did *not* know what was going to happen. Nevertheless, Murray answered that the Petitioner did know what was going to happen, which surprised both sides. In addition, there was a lengthy colloquy between the trial judge and Murray regarding the distinction between what the Petitioner said and what Murray gleaned from the Petitioner's words. It could reasonably be argued that Murray did not understand this distinction, and that the curative instruction would not suffice to "un-ring the bell." In sum, though the Court believes the issue was properly decided, reasonable jurists could find this Court's holding "debatable or wrong." *Swisher*, 325 F.3d at 229. A certificate of appealability is therefore granted as to this issue.

*Ground 11*

■ Ground 11 is the Petitioner's most strenuously-argued claim: that one of his

---

1. The Court notes, however, that the Petitioner may still petition the Fourth Circuit for a certificate of appealability on this issue. *See* Fed. R.App. P. 22(b). The Court feels that the Fourth Circuit should decide whether to entertain an argument to overrule its own decision.

attorneys suffered from an actual conflict of interest in that he actively represented the Petitioner's parents and either hampered or prevented potentially embarrassing family information from being presented at sentencing as mitigating evidence. This Court concluded that there was no actual conflict of interest, that there was conflicting evidence as to whether this family information was in fact prevented from being disclosed and that the PCR court's credibility determinations should not be disturbed, and that even if revealed the information would not have affected the outcome of the proceedings. The Petitioner also sought an evidentiary hearing in this Court on the conflict of interest issue, which was denied.

This issue is, and always has been, the Petitioner's strongest argument in favor of relief. Even the possibility of a conflict of interest affecting a criminal defendant's representation, especially in a capital case, should be evaluated with great care. This was, as the Court has indicated in previous orders, an unusual situation in that the trial court issued an order affirmatively appointing one of the Petitioner's three attorneys to represent the parents. Moreover, there is some evidence which, if believed, shows that the attorney sought to at least limit the extent of the family information presented at sentencing. In short, this is a close call. Though the Court is confident that the proper decision was reached, it is certainly likely that reasonable jurists would debate that the issue should be resolved in a different manner. *Miller–El*, 537 U.S. at 336, 123 S.Ct. at 1039. Accordingly, a certificate of appealability is granted as to this issue.

*Ground 15*

■ Ground 15 focuses on a second statement made by Chief Deputy James Murray at trial. Murray testified that while interviewing the Petitioner, the Petitioner said, "My God, we killed those kids for fifteen hundred dollars." When asked whether he thought this was an expression of remorse by the Petitioner, Murray stated that he did not know. At a PCR deposition, however, Murray indicated that the Petitioner was "emotionally upset," and believed the Petitioner to be remorseful. This Court rejected the Petitioner's claim that the evidence of remorse should have been turned over to the defense prior to trial. This Court agreed with the PCR court that Murray's statement was merely a witness' "impression" of the Petitioner's demeanor, which is not required to be turned over to the defense under the *Brady* line of cases. *See Kyles v. Whitley*, 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (giving history of *Brady* line). The Court also found that this evidence, in light of all the other testimony, would not have affected the jury's decision to impose the death penalty.

The Petitioner argues that *Brady* and its progeny do require the disclosure of witnesses' mental impressions of a defendant's demeanor, including whether he was remorseful, and that such testimony would have affected the jury's decision. As noted in its previous order, the Court believes that *Brady* has not been held to specifically require this evidence to be turned over, and that this case is readily distinguishable from those cited by the Petitioner. However, because this issue has not been precisely decided, reasonable jurists could debate whether this was the right decision. *Swisher*, 325 F.3d at 229. A certificate of appealability is therefore granted as to this issue.

*Ground 19*

■ Lastly, Ground 19 claims that the Petitioner's counsel were unconstitutionally ineffective in their representation. The Court agreed with the Magistrate Judge that the issue was procedurally bypassed because ineffective assistance of counsel

was not raised at the PCR appeal. The Petitioner argued that it was the ineffective assistance of PCR appellate counsel which caused the issue of ineffective assistance of trial counsel to be bypassed, and that this was sufficient "cause" to excuse the bypass. The Court found that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted" (citing *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000)). However, the Court concluded that this was not possible because 28 U.S.C. § 2261(e) specifically provides that "the ineffectiveness or incompetence of counsel during State or Federal post-conviction proceedings in a capital case shall not be a ground for relief in a proceeding arising under section 2254."

Clearly, this is not a well-settled issue, especially after the *Edwards* decision. Indeed, the Fourth Circuit recently recognized the confusion surrounding this question:

> *Edwards* does not tell us whether "the same claim of ineffective assistance of counsel get[s] reviewed differently when presented merely as cause for a procedural default as opposed to being presented in a petition as the basis in the first instance for habeas relief[.]"

*Orbe v. True*, 82 Fed. Appx. 802, 807–08 (4th Cir. Dec.11, 2003) (quoting *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir.2003)) (alterations by *Orbe* court).

> By engrafting the deferential standard of § 2254(d) onto the "cause" prong of the federal doctrine of procedural default, the district court effectively held that § 2254(d) compels the conclusion that federal habeas courts are precluded from reviewing a procedurally defaulted federal constitutional claim which has not been reviewed on the merits by any court, even if we would independently find that counsel

was constitutionally ineffective for failing to raise the claim on direct appeal—unless, of course, we could also say that the state court's contrary finding was an unreasonable application of Supreme Court precedent. *Cf. Mitchell v. Esparza*, —— U.S. ——, ——, 124 S.Ct. 7, 11, 157 L.Ed.2d 263 (2003) (per curiam) (noting that under § 2254(d)'s standard of review, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous"). However, at least one other district court has reached a contrary conclusion, holding that procedural default remains an independent federal doctrine and, accordingly, that we determine de novo whether a state court defendant has demonstrated cause to excuse his or her failure to raise a constitutional claim before the state courts. *See Holloway v. Horn*, 161 F.Supp.2d 452, 478 n. 12 (E.D.Pa.2001); *Holland v. Horn*, 150 F.Supp.2d 706, 747 (E.D.Pa.2001).

*Orbe*, at 807–08. The Fourth Circuit did not undertake further analysis of the matter, however, finding it "unnecessary to resolve the issue" because Orbe did not demonstrate ineffective assistance of counsel under any standard of review. *Id.*

Because the issue is very much unresolved, the Court finds that reasonable jurists could debate whether there is a valid claim for the denial of a constitutional right and whether this Court resolved the procedural issue correctly. *See Swisher*, 325 F.3d at 229. A certificate of appealability is granted as to this issue.

Based on the foregoing, it is

ORDERED that the Petitioner's request for a certificate of appealability is granted in part and denied in part; that the request is denied with respect to the "procedural objection" regarding *de novo* review;

that the request is granted with respect to Grounds 4, 11, 15, and 19; and that the Clerk of Court shall promptly forward this order, the notice of appeal and the record in this case to the Fourth Circuit pursuant to Federal Rule of Appellate Procedure 22(b).

IT IS SO ORDERED.